IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 FEB 11 AM 9: 26
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

MARK HOUSTON BURKEEN,
**Plaintiff,**

-vs-

**Case No.  A-13-CA-93-SS**

CAROLYN W. COLVIN, COMMISSIONER OF
THE SOCIAL SECURITY ADMINISTRATION,
**Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff's Brief in Support of Claim [#16], Defendant's Brief in Support of the Commissioner's Decision [#18], Plaintiff's Reply to Brief in Support of Commissioner's Decision [#19], the Report and Recommendation of United States Magistrate Judge Mark Lane [#20], Plaintiff's Objections [#21] thereto, and the Social Security Transcript [#14] (Tr.).  Having considered the documents, the file as a whole, and the governing law, the Court now enters the following opinion and orders, accepting the Report and Recommendation, and affirming the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration.[1]

### Background

This is an appeal from a denial of social security disability benefits.  All matters in the case were referred to the Honorable Mark Lane, United States Magistrate Judge, for report and

---

[1] On February 14, 2013, Astrue's six-year term as Commissioner expired and Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Accordingly, Colvin is automatically substituted as the proper party. *See* FED. R. CIV. P. 25(d).

recommendation (R&R) pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local

Court Rules of the United States District Court for the Western District of Texas, Local Rules for

the Assignment of Duties to United States Magistrate Judges. The Magistrate Judge issued his R&R,

finding the Social Security Commissioner's decision should be affirmed. Plaintiff Burkeen timely

filed his Objections. Therefore, the Court reviews the objected-to portions of the R&R de novo and

the unobjected-to portions for plain error only. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474

U.S. 140, 150–52 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.

1996) (en banc).

The Magistrate Judge ably detailed the procedural and factual history as follows:

## I. PROCEDURAL HISTORY

Plaintiff Mark Houston Burkeen ("Burkeen") applied for social security benefits on September 27, 2010 alleging disability beginning January 2, 2008 due to right arm injury, right leg injury, back injury and stroke in his right eye. (Tr. 175-81, 205). His claim was denied at the administrative level. (Tr. 80-89, 94-103,108-14). Burkeen then filed a request for a hearing which was conducted before an Administrative Law Judge ("ALJ") on December 13, 2011. (Tr. 34, 115-17).

The ALJ issued his decision on February 8, 2012. In his decision, the ALJ found that Burkeen suffered from the severe impairments of osteoarthritis of the right knee, status post meniscectomy and thermal ACL repair, degenerative joint disease of the lumbar spine, obesity, hypertension and borderline intellectual functioning, but that he retained the residual functional capacity to perform a limited range of light work. (Tr. 18-28). Plaintiff appealed. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 27, 2012. (Tr. 5-7). After obtaining an extension of time, Plaintiff filed this action seeking judicial review of the ALJ's decision on February 4, 2013. (Tr. 1-2).

Plaintiff appeals from the determination of the ALJ that he is not "disabled" and presents for review a single issue: whether the ALJ erred in finding he retains the ability to perform work existing in significant numbers in the national economy.

. . .

### III. ADMINISTRATIVE HEARING AND DECISION

Burkeen testified at the administrative hearing that he had seven years of education, and did not have a GED. (Tr. 38). He reported previously working in construction and as a window washer, but stated he had essentially stopped working following an injury to his back, right arm and right leg when a ladder fell on him. (Tr. 39-41). Plaintiff testified that he could sit for an hour with some pain, and stand for "not too long." (Tr. 55-56). When asked if he could sit and stand throughout the day, Plaintiff answered "As long as I keep moving a little bit I can circulate you know." (Tr. 56). Plaintiff also reported that he could sit watching television for thirty to forty-five minutes before dozing off. (Tr. 63).

Vocational expert Donna Eagar ("Eagar") also testified at the administrative hearing. (Tr. 64). The vocational expert reviewed Plaintiff's past work history, classifying Burkeen's prior work in construction as up to very heavy unskilled, and his work as a window washer as medium unskilled. (Tr. 65). The ALJ posed a hypothetical claimant to Eagar who is: (1) capable of sitting six hours in an eight-hour workday and standing and/or walking four hours in an eight-hour workday, with the option to sit and stand at will; (2) the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently, with the ability to push and pull the same weights; (3) the ability to occasionally crawl, squat, and stoop; (4) no climbing of ladders or working at heights; (5) no continuous exposure to environmental pollutants; and (6) only simple, repetitive tasks. After additional clarification, Eagar testified such an individual would be unable to perform any of Plaintiff's past relevant jobs. (Tr. 65-66).

Eagar further testified such an individual, with the option to alternate standing and sitting, would be able to perform jobs including assembler of plastic hospital parts, wire worker and production inspector. (Tr. 67).

In determining Burkeen was not entitled to benefits, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 2, 2008. At step two of the five step analysis, the ALJ found Burkeen has the severe impairments of osteoarthritis of the right knee, status post meniscectomy and thermal ACL repair, degenerative joint disease of the lumbar spine, obesity, hypertension and borderline intellectual functioning. (Tr. 18).

The ALJ next found Plaintiff's impairments did not meet or equal one of the listed impairments. The ALJ then concluded Burkeen retains the residual functional capacity to maintain employment at the following level:

the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, with the ability to push or pull those weights; stand and/or walk for a total of 4 hours in an 8-hour workday; and to sit for a total of 6 hours in an 8-hour workday, with the option to alternate sitting or standing at will, up to once or twice an hour. The claimant can perform no more than occasional crawling, squatting, stooping, except that

-3-

he is unable to climb ladders or work at heights. He should avoid concentrated exposure to environmental pollutants. He is limited to simple, repetitive tasks.

(Tr. 21). The ALJ further found Burkeen had a limited education and was able to communicate in English. (Tr. 27).

In finding Burkeen did not retain the ability to perform the full range of light work, but also finding there are still jobs that exist in significant numbers in the national economy that he can perform, the ALJ relied on the testimony of the vocational expert:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by the Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations;

|  | **Texas** | **U.S.** |
|---|---|---|
| 1. Assembler, hospital plastic products | 19,000 | 225,000 |
| 2. Wire worker | 7,000 | 85,000 |
| 3. Production inspection | 4,500 | 52,000 |

(Tr. 27-28).

R&R [#20] at 1–2, 4–6.

## Discussion

### I.    Standard of Review

Judicial review of the ALJ's decision is limited.  Specifically, this Court reviews: (1) whether the ALJ's decision was supported by substantial evidence; and (2) if so, whether the ALJ made any errors of law in evaluating the evidence.  *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). Procedurally, the administrative process need not have been perfect, and this Court "will not vacate

a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d

1362, 1364 (5th Cir. 1988). Procedural errors are therefore a basis for remand only if they "would

cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v.*

*Bowen*, 864 F.2d 333, 334 (5th Cir. 1988).

"Substantial evidence is evidence that a reasonable mind would accept as adequate to support

the decision." *Id.* In making these determinations, the Court must "carefully scrutinize the record"

to determine if there is substantial evidence to support the ALJ's conclusions, but the Court can

neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hollis v. Bowen*, 837

F.2d 1378, 1383 (5th Cir. 1988).

## II.    Administrative Standards

The Commissioner follows a five-step process in analyzing claims for disability benefits:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is

made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520. The claimant has the burden of proof for the first four steps. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). At Step Five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Id.* If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks and citation omitted).

"Residual functional capacity" refers to the claimant's ability to do work despite any physical or mental impairments. 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing and determining residual functional capacity at the administrative hearing level. *Id.* § 404.1546. This assessment is based on reports from treating physicians and medical consultants about the claimant's ability to sit, stand, walk, lift, carry, and perform other work-related activities. *Id.* §§ 404.1513(b)(6), 414.1513(c)(1).

## III. Application

In challenging the denial of benefits, Burkeen presents a single issue: whether the ALJ erred in finding he retains the ability to perform work existing in significant numbers in the national economy.[2] Specifically, Burkeen contends the ALJ erred in addressing his ability to sit and stand, his math abilities, and the fact he is functionally illiterate.

---

[2]Burkeen does not contend the ALJ erred in assessing the medical evidence of record concerning his physical limitations or determining his residual functional capacity. Accordingly, a detailed summary of the medical evidence is not necessary.

A.      **Sit/Stand Option**

Burkeen first contends the ALJ erred in failing to properly consider the limitations on his

ability to sit and stand in determining the work he was able to perform.  The Fifth Circuit has made

clear:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be
> said to incorporate reasonably all disabilities of the claimant recognized by the ALJ,
> and the claimant or his representative is afforded the opportunity to correct
> deficiencies in the ALJ's question by mentioning or suggesting to the vocational
> expert any purported defects in the hypothetical questions (including additional
> disabilities not recognized by the ALJ's findings and disabilities recognized but
> omitted from the question), a determination of non-disability based on such a
> defective question cannot stand.

*Bowling*, 36 F.3d at 436; *see also Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (ALJ may rely

on vocational expert's testimony provided record reflects adequate basis for doing so); *Fields v.

Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (value of vocational expert lies in expert's familiarity

with specific requirements of particular occupation and ability to compare unique requirements of

specified job with particular ailments a claimant suffers).

As set forth above, the ALJ found Burkeen retained the ability to "stand and/or walk for a

total of 4 hours in an 8-hour workday; and to sit for a total of 6 hours in an 8-hour workday, with the

option to alternate sitting or standing at will, up to once or twice an hour." (Tr. 21).  In questioning

Eagar, the vocational expert (VE), the ALJ described a hypothetical individual who "can sit for six

hours, but can only stand and walk approximately four hours.  Allowing for sitting and standing at

will." (Tr. 65).  Eagar asked for clarification on another point, then stated:

> A.      And then the second question is, the alternating at will.  Clearly somebody
> can be sitting and standing and sitting and standing and sitting and standing so much
> that they're never going to get any work done.  So how – approximately how
> frequently would the person need to alternate?

-7-

Q.      Within an hour, the person could sit up to 15 minutes and stand 45 minutes.

A.      Okay.  So really only alternating only about once every – once to twice an hour.

Q.      Yes.

A.      Okay. Judge, thank you.  With that clarification, there are jobs a person could do with those limitations.  And examples would include a variety of assembly jobs at the unskilled light exertional level such as being an assembler of plastic hospital products.
         And Judge, I'm going to reduce the general number of these jobs by 25 percent because there are a few of them that would not accommodate the need to alternate sitting and standing.

(Tr. 66-67).  As set forth above, the ALJ relied on the testimony of Eagar in concluding Burkeen was not disabled.  (Tr. 27-28).

Burkeen maintains the ALJ's reliance on Eagar's testimony regarding the jobs he is able to perform was erroneous because the hypothetical posed by the ALJ was internally inconsistent. Specifically, Burkeen points out the ALJ first described a hypothetical individual who can stand for four hours and sit for six hours in an eight-hour workday, but then described the individual as able to to sit up to fifteen minutes and stand forty-five minutes.  Burkeen contends the latter description, if expanded to an eight hour day, would well exceed his four hour limit for standing as found by the ALJ.

Although Plaintiff's arithmetic is accurate, the Court disagrees with his conclusion.  When examined as a whole, the transcript of the administrative hearing shows the ALJ properly included Burkeen's postural limitations in the hypothetical he posed to Eagar.  Eagar did not seek clarification regarding the amount of time the hypothetical individual was able to sit or stand.  Rather, she sought clarification regarding how frequently the individual would need to change position.  The ALJ

-8-

clearly answered this question, although the ALJ apparently misspoke and confused the comparative time spent sitting and standing.

In his Objections, Burkeen disputes the Magistrate Judge improperly distinguishing between (1) the determination regarding the amount of time the hypothetical individual was able to sit or stand and (2) the determination regarding how frequently the individual would need to change position. Objections [#21], at 2. There is a difference, however, and the focus of Eager's attention is exclusively on the frequency with which the individual would need to change position. Indeed, Eager's first question is how frequently the person would need to alternate positions, and after the ALJ described the individual as being able to "sit up to 15 minutes and stand 45 minutes," Eager again focused her follow up question on how often the individual would need to alternate positions. Eager was concerned the individual might need to alternate so frequently in one hour, he would never be able to get any work done. But Eager's follow up question and the ALJ's response clarified he would only need to alternate once or twice in one hour. Alternating once or twice an hour is consistent with the ALJ's hypothetical individual who "can sit for six hours, but can only stand and walk approximately four hours," as well as the individual the ALJ described, when he apparently misspoke, as being able to "sit up to 15 minutes and stand 45 minutes" within an hour. Either way, Eager's understanding is correct, and Eager gave no indication she was confused by the ALJ's statement; instead, she was focused on clarifying the hypothetical individual would only need to alternate once or twice an hour rather than so continuously as to make it difficult or impossible to get any work done.

In his Objections, Burkeen disputes the Magistrate Judge's conclusion the ALJ "'apparently misspoke and confused the time sitting and standing,'" but nevertheless upholding the ALJ's

decision. Objections [#21], at 2 (quoting R&R [#20], at 8). Burkeen notes "'[c]onflicts within the evidence are not for the court to resolve.'" *Id.* (quoting *Selders*, 914 F.2d at 617). As Burkeen argues, "the decision by the ALJ must stand or fall on the rationale set forth in the ALJ's opinion." *Id.* (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). Finally, Burkeen points out the "the Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis." *Id.* (citing *Sec. and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

While Burkeen is correct the Court should not resolve conflicts in the evidence, the Court, in this case, is not resolving any conflict by acknowledging the ALJ apparently misspoke. The important point is Eager meant to clarify whether the hypothetical individual needed to alternate sitting and standing so frequently so as to be incapable of meaningful work, and Eager obtained the answer she needed for her conclusions. Whether Eager understood the ALJ to be using the hypothetical person who can sit for six hours but can only stand and walk approximately four hours, or the hypothetical person who can sit up to 15 minutes and stand 45 minutes within an hour, is immaterial. In addition, the Court concludes, given the context of their entire discussion, Eager understood the ALJ to be utilizing the hypothetical individual who can sit for six hours but can only stand and walk approximately four hours in an eight hour workday. There is no conflict in the evidence being resolved, and there is plenty of medical evidence and medical findings existing on the record to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) ("A finding of insubstantial evidence is proper only if no credible evidence or medical findings exist to support the decision."). The Court is not finding or creating a different, better, or more adequate basis, but rather concludes the decision by the ALJ stands on the rationale set forth in the ALJ's opinion.

The Court additionally notes counsel for Burkeen was permitted to, and did, engage in further questioning of Eagar, but did not seek to correct the hypothetical posed by the ALJ. *See Vaught v. Astrue*, 271 F. App'x 452, 456 (5th Cir. 2008) (rejecting claim that ALJ failed to incorporate evidence and medical opinion in hypothetical posed to vocational expert, noting plaintiff was provided opportunity to question vocational expert and could have corrected any errors in hypotheticals); *White v. Astrue*, 240 F. App'x 632, 634 (5th Cir. 2007) (reliance on vocational expert's testimony, unchallenged through cross-examination, elicited by hypothetical questions incorporating RFC determination, was proper); *see also Carey*, 230 F.3d at 146–47 (finding "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing").

In his Objections, Burkeen argues the decisions in *Vaught*, *White*, and *Carey* are distinguishable from the instant case. *See* Objections [#21], at 3–4. Burkeen is correct when he notes Vaught offered "only a bare assertion of error" and did "not contend that the ALJ's questions failed to reasonably incorporate the disabilities recognized by the ALJ, or that the hypotheticals were inconsistent with the ALJ's findings." *Id.* at 3 (quoting *Vaught*, 271 F. App'x at 456). Burkeen, in contrast, did make such contentions. *Vaught*, however, goes on to state: "Moreover, the ALJ provided Vaught with the opportunity at the hearing to question the vocational expert, that is, Vaught could have corrected any errors in the hypotheticals, or added additional disabilities, during the hearing." *Vaught*, 271 F. App'x at 456. Similarly, Burkeen, through his attorney, was provided the opportunity to question Eager and correct the alleged error made by the ALJ during the hearing. *See*

-11-

Tr. 68–72.  Burkeen's counsel, however, failed to address this supposed mistake by the ALJ. Burkeen, in his Objections, does not dispute his attorney's failure to mention the supposed error nor does he provide any explanation or excuse for why his attorney did not alert the ALJ at the hearing to his error, thus giving the ALJ an opportunity to clarify his statement.

Burkeen also argues *White* is inapplicable because in *White*, the court merely found the ALJ's reliance on the VE's testimony, which was not challenged through cross examination, was warranted since the hypothetical posed incorporated the residual functional capacity (RFC) determination. *See* Objections [#21], at 3.  In contrast, Burkeen contends in this case, the ALJ did not incorporate the RFC determination because the RFC and the hypothetical were internally conflicting. *Id.* Burkeen seems to be arguing there is only an obligation to cross examine the VE's testimony when the hypothetical incorporates the RFC determination, but *White* does not so limit itself.  Indeed, there is no reason to think a claimant does not have an obligation to cross examine a VE when the claimant thinks the RFC determination and the posed hypothetical are internally conflicting, but does have such an obligation when the hypothetical properly incorporates the RFC determination.  If anything, the obligation to cross examine would be even stronger in the former scenario compared to the latter.

Finally, Burkeen distinguishes *Carey*, arguing it addressed instances in which there is an implied or indirect conflict between the VE's testimony and the Department of Labor's Dictionary of Occupational Titles (DOT), which is not the issue here.  Objections [#21], at 4.  Instead, the conflict was "a direct and obvious one." *Id.* The Court agrees with Burkeen's distinction, but does not agree with Burkeen's implied argument there was not an obligation on Burkeen and his attorney to cross examine the VE if they thought the ALJ had posed a hypothetical inconsistent with his RFC

determination. Indeed, if there is such an obligation when the conflict is "implied or indirect," Burkeen does not explain why there would not be one when the conflict is "direct and obvious."

In sum, Burkeen does not dispute he and his lawyer failed to alert the ALJ and the VE of this supposed error, and they do not explain why they failed to do so. In fact, Burkeen, in his Objections, never explicitly disputes he could have and should have cross examined the VE about the claimed internal conflict.

Because the hypothetical questions contained all the functional limitations recognized by the ALJ, the ALJ's reliance on the vocational testimony was proper and constitutes substantial evidence to support the conclusion Burkeen was not disabled. *See Garson v. Barnhart*, 162 F. App'x 301, 304 (5th Cir. 2006) (ALJ did not err in accepting testimony of vocational expert as to capability of hypothetical individual of plaintiff's age, education, employment history, and residual functional capacity); *Halley v. Barnhart*, 158 F. App'x 645, 647 (5th Cir. 2005) (substantial evidence supported decision where ALJ considered testimony of medical witnesses and relied on testimony of vocational experts concerning whether claimant with plaintiff's limitations could perform work of specified job). Thus, the Court concludes the ALJ did not err on this basis.

## B. Math Abilities

Burkeen next argues the ALJ erred in concluding Burkeen was able to perform the jobs identified by the vocational expert because his mathematical abilities are more limited than the jobs require. According to Burkeen, each of the jobs identified by the vocational expert require a mathematical development level of 1. He contends the ALJ erred in accepting the testimony of the vocational expert because his mathematical abilities are too limited to satisfy the requirements of that level.

The DOT defines a mathematical development level of 1 (the lowest level) as having the ability to:

> Add and subtract two-digit numbers.  Multiply and divide 10's and 100's by 2, 3, 4, 5.  Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

Dictionary of Occupational Titles, App. C.

At the administrative hearing, Burkeen testified he attended school for seven years and did not have a GED.  (Tr. 38).  He stated he had a lot of trouble with math, reading, and writing while in school.  (Tr. 60).  Burkeen testified he is able to add, subtract, and perform simple multiplication, but is unable to do division or use fractions.  (Tr. 60-62).  During an internal medicine consultative examination by Robert Stroud in May 2010, Burkeen reported he had been in special education classes for both math and reading while in school.  (Tr. 357).  At a psychological evaluation conducted May 17, 2011 by Stan Friedman, Burkeen scored in the third grade equivalent for arithmetic and was noted to have "made many calculation errors."  (Tr. 382).  However, Friedman also noted Burkeen did household shopping, and found him capable of managing his own benefit payments.  (Tr. 379, 381).  In a function report dated November 18, 2010, Burkeen reported he was able to shop, pay bills, and count change, as well as handle checking and savings accounts.  (Tr. 229).  In addition, the Court notes Burkeen has not alleged his mathematical abilities have been affected by his allegedly disabling impairments.

During the administrative hearing the vocational expert identified Burkeen's past relevant work as Construction Worker II and Window Washer.  Significantly, as the Commissioner points

out, both of those occupations are rated as requiring level 1 mathematical skills. Dictionary of Occupational Titles, 869.687-026 (Construction Worker II), 386.687-014 (Window Washer). The evidence establishes Burkeen was able to perform both those jobs before the onset of his allegedly disabling impairments, and thus presumably possessed the requisite mathematical abilities. The Court therefore finds Burkeen has not shown the ALJ erred in concluding he was able to engage in the occupations identified by the vocational expert at the administrative hearing due to his limited mathematical abilities.

## C.   **Functional Illiteracy**

Burkeen finally argues the ALJ erred in employing Social Security guidelines applicable to a person of limited education. Burkeen maintains the evidence of record establishes he is in fact illiterate. He contends the ALJ should have employed guidelines applicable to an individual who is illiterate.

The pertinent regulations define "illiteracy" as "the inability to read or write" and further state an individual is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). "Limited education" is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs" and generally includes individuals with a seventh grade level of formal education. 20 C.F.R. § 404.1564(b)(3).

As noted above, at the administrative hearing, Burkeen testified he attended school for seven years, did not have a GED, and had a lot of trouble with math, reading, and writing while in school. (Tr. 38, 60). He also reported he had been in special education classes for reading while in school.

-15-

(Tr. 357). Stroud noted in his internal medical consultation result Burkeen was likely functionally illiterate. (Tr. 359). Similarly, in the psychological evaluation conducted by Friedman, Burkeen scored in the third grade equivalent for reading and first grade equivalent for spelling. (Tr. 382).

However, Burkeen's own reports contradict those findings. Burkeen completed a written function report in May 2010 describing his daily activities and noted reading as one of his hobbies. (Tr. 212-24). In November 2010 he again completed a written function report indicating reading was one of his hobbies, and further he had increased his reading following his injuries. (Tr. 226-33). Burkeen described his ability to follow written instructions as "ok." (Tr. 231). Similarly, in his disability report, Burkeen states he is able to read and understand English, and write more than his own name in English. (Tr. 234).

Accordingly, the Court finds there was substantial evidence in the record from which the ALJ could conclude Burkeen was not illiterate, as the term is defined in the pertinent regulations. Burkeen has therefore not shown the ALJ erred in concluding he had a limited education and in applying the related guidelines. The Court thus finds Burkeen has failed to establish the ALJ erred in finding he was able to perform jobs that exist in significant numbers in the national economy.

## Conclusion

In the end, there is substantial evidence in the record Burkeen is capable of making a successful adjustment to other work existing in significant numbers in the national economy, and there were no procedural errors.

Accordingly,

IT IS ORDERED that Plaintiff Mark Houston Burkeen's Objections [#21] are OVERRULED;

-16-

IT IS FURTHER ORDERED that the Report and Recommendation of United States Magistrate Judge Mark Lane [#20] is ACCEPTED;

IT IS FINALLY ORDERED that the Commissioner's decision in this case is AFFIRMED.

SIGNED this the _10th_ day of February 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE